# UNITED STATES  DISTRICT COURT
# EASTERN DISTRICT OF LOUISIANA

**CALVIN ERIC HARRIS**                                    **CIVIL ACTION**

**VERSUS**                                                       **NO.  12-2783**

**LOUIS LABAT, III (OFFICER),**                    **SECTION "F"(4)**
**TRACIE MENDUS (OFFICER),**
**RAYMOND GENOVESE (SERGEANT),**
**RONAL SERPAS (SUPERINTENDENT)**

## REPORT AND RECOMMENDATION

      This matter was referred to a United States Magistrate Judge to conduct a hearing, including an evidentiary hearing, if necessary, and to submit proposed findings and recommendations for disposition pursuant to **28 U.S.C. § 636(b)(1)(B) and (C), § 1915e(2), and § 1915A**, and as applicable, **42 U.S.C. § 1997e(c)(1) and (2)**.  On January 8, 2013, the Court conducted a hearing pursuant to *Spears v. McCotter*,[1] and its progeny, with the plaintiff and counsel for the defendants participating by conference telephone call.[2]  Upon review of the entire record, the Court has determined that this matter can be disposed of without an evidentiary hearing.

---

[1]766 F.2d 179 (5th Cir. 1985).  The purpose of the *Spears* Hearing is to ascertain what it is the prisoner alleges occurred and the legal basis the claims.  The information elicited at the hearing is in the nature of an amended complaint or a more definite statement under Fed. R. Civ. P. 12(e).  *Wilson v. Barientos*, 926 F.2d 480, 482 (5th Cir. 1991).

[2]Rec. Doc. No. 9.  The plaintiff was sworn prior to testifying.  The hearing was digitally recorded.

I.      **Factual Background**

     A.      **The Complaint**

The plaintiff, Calvin Eric Harris ("Harris"), is presently housed in the Winn Correctional Center in Winnfield, Louisiana.[3]  He filed this *pro se* and *in forma pauperis* complaint pursuant to 42 U.S.C. § 1983 against Officers Louis Labat and Tracie Mendus, Sergeant Raymond Genovese, and Superintendent Ronal Serpas, all with the New Orleans Police Department ("NOPD"), seeking redress for allegedly having suffered an unreasonable search and seizure, false arrest and imprisonment, and harassment stemming from his arrest in December of 2009.

Harris alleged in the complaint that, in December of 2009 while in the French Quarter, he was detained without probable cause by Officers Labat and Mendus.  He claimed that Officer Mendus pulled out a taser and ordered him to freeze.  Officer Labat then searched his pockets without any facts to indicate that a crime was being committed.  Harris, however, indicated that a city ordinance prohibits the sale of tickets within 1500 feet of the Superdome, where the defendants claim he was selling tickets to a Saints game.

Harris also claimed that a federal consent decree was entered into on March 16, 2011, to rectify a pattern of unconstitutional stops, searches and seizures by the NOPD, including the use of force and arrests made without probable cause.  He further alleged that after the consent decree was reached following an investigation by the United States Department of Justice which documented these patterns, he was able to articulate the facts to support his claims.

As relief, Harris sought an order requiring the NOPD to reform its policies dealing with search and seizure, stop and frisk, and the way police reports are written.  He also sought

---

[3]Rec. Doc. No. 10.

reimbursement for the costs of mental health care sustained as a result of his arrest and $5.2 million for pain and suffering from harassment and the arrest.

  **B.**   **The *Spears* Hearing**

  Harris testified that on December 20 or 21, 2009, he was walking in the French Quarter. He stated that Officer Labat approached him while he was waiving two Saints game tickets in the air and asking if anyone wanted to purchase them. Harris stated that the female officer, Mendus, then approached him with her taser out and ordered him to freeze. Officer Labat then went through Harris's pockets and things without any probable cause.

  Harris further testified that the officers did not indicate that he had done anything wrong like scalp tickets. Instead, the officers just put handcuffs on him and transported him down to the precinct. Harris recalled that he was booked with the illegal use of counterfeit trademark, and the charge was later amended to forgery. He indicated that his trial was set for January 25, 2013. Harris also testified that he believes that his actions that day were lawful, and he challenges the city ordinance which prohibited ticket sales within 1500 feet from the Superdome.

  Harris further alleged that Officer Mendus used excessive force, because she pointed her taser at him, although she did not use it. He also complained that the officers "harassed" him when he asked to be released from the "investigatory stop."

  Harris indicated that he named Sergeant Genovese as a defendant because he was the sergeant who instructed the other officers to be on the lookout for counterfeit tickets being sold in the French Quarter. Harris testified that Sergeant Genovese compared the tickets seized from Harris and concluded that the tickets were not authentic. Harris claims that the Sergeant later sent the tickets to the Superdome, where personnel there indicated that the tickets were counterfeit. Harris

conceded that Sergeant Genovese's conclusion was ultimately proven correct; however, he sued the Sergeant because he signed-off on the police report which contained blatant lies.  He did not specify what the alleged lies were.  Harris further testified that he filed suit against Superintendent Serpas as the supervisor over the other officers who was ultimately responsible for their actions.

Harris complained that as a result of the arrest he has been depressed.  Upon questioning by the Court, Harris testified that he submitted a medical request to prison officials related to his mental health, and that he was seen by a doctor for just a two minute visit.  The doctor did not provide him with any antidepressants and he did not receive any other care from the prison officials.

## II.    <u>Standard of Review for Frivolousness</u>

Titles 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e(c) require the Court to *sua sponte* dismiss cases filed by prisoners proceeding *in forma pauperis* upon a determination that they are frivolous.  The Court has broad discretion in determining the frivolous nature of the complaint. *See Cay v. Estelle*, 789 F.2d 318, 323 (5th Cir. 1986), *modified on other grounds*, *Booker v. Koonce*, 2 F.3d 114 (5th Cir. 1993).  However, the Court may not *sua sponte* dismiss an action merely because of questionable legal theories or unlikely factual allegations in the complaint.

Under this statute, a claim is frivolous only when it lacks an arguable basis either in law or in fact. *Neitzke v. Williams*, 490 U.S. 319, 324-25 (1989); *Talib v. Gilley*, 138 F.3d 211, 213 (5th Cir. 1998).  A claim lacks an arguable basis in law if it is based on an indisputably meritless legal theory, such as if the complaint alleges the violation of a legal interest which clearly does not exist. *Harper v. Showers*, 174 F.3d 716, 718 (5th Cir. 1999) (quotation omitted).  It lacks an arguable factual basis only if the facts alleged are "clearly baseless," a category encompassing fanciful, fantastic, and delusional allegations. *Denton v. Hernandez*, 504 U.S. 25, 32-33 (1992); *Neitzke*, 490

4

U.S. at 327-28.  Therefore, the Court must determine whether the plaintiff's claims are based on an indisputably meritless legal theory or clearly baseless factual allegations.  *Reeves v. Collins*, 27 F.3d 174, 176 (5th Cir. 1994); *see Jackson v. Vannoy*, 49 F.3d 175, 176-77 (5th Cir. 1995); *Moore v. Mabus*, 976 F.2d 268, 269 (5th Cir. 1992).

## III.   Analysis

The record reflects that on or before December 21, 2009, Harris was arrested in connection with the counterfeit football tickets underlying the forgery charge against him.[4]  He claims that the officers harassed him and that his arrest and detention by the officers were based on false accusations.[5]  He also claims that he suffered excessive force at the hands of Officer Mendus during that arrest when she pointed her taser gun at as part of the harassment.  Harris further contends that Officer Labat engaged in an unlawful search and seizure during the arrest when the officer reached into Harris's pockets when he was stopped.

Pretermitting whether Harris has presented or could present a factual or legal basis for these claims, Harris's complaint was not timely filed and his claims must be dismissed with prejudice as frivolous and for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A and 42 U.S.C. § 1997e.  *Jones v. Bock*, 549 U.S. 199, 215 (2007) (recognizing that when a complaint shows that an action is barred by the applicable statute of limitations, the complaint is subject to dismissal during § 1915 *et seq.* screening).

Because there is no federal statute of limitations for § 1983 claims, the district court looks for comparison to the forum state's statute of limitations for personal injury claims.  *Wallace v.*

[4]The Court gives Harris the benefit of the doubt that December 21, 2009 was the date of arrest.

[5]Under a broad reading, Harris's claim of harassment is part of or subsumed in the facts underlying his claims of excessive force and false arrest and is considered an underlying part of each of those claims.

*Kato*, 549 U.S. 384, 387 (2007); *Wilson v. Garcia*, 471 U.S. 261, 275 (1985) (§ 1983 actions are best characterized as personal injury actions); *Jacobsen v. Osborne*, 133 F.3d 315, 319 (5th Cir. 1998) (citing *Moore v. McDonald*, 30 F.3d 616, 620 (5th Cir. 1994)).  In Louisiana, personal injury claims are governed by La. Civ. Code art. 3492, which provides for a prescriptive period of one year from the date of injury or damage.[6]  *See Jacobsen*, 133 F.3d at 319 (citing *Elzy v. Roberson*, 868 F.2d 793, 794 (5th Cir. 1989)).

For purposes of calculating the limitations period, a § 1983 cause of action accrues under federal law when the plaintiff knows or has reason to know of the injury which forms the basis of his action.  *Wallace*, 549 U.S. at 388; *Jacobsen*, 133 F.3d at 319; *Gonzales v. Wyatt*, 157 F.3d 1016, 1020 (5th Cir. 1998).  The Supreme Court has held that the limitations period, or prescriptive period in Louisiana, begins to run at the point when "the plaintiff can file suit and obtain relief."  *Id.*, at 388 (citations omitted).

For the reasons assigned below, Harris's excessive force, false arrest and unreasonable search and seizure claims are time-barred.

A.    **Excessive Force**

Harris alleges that he suffered excessive force through harassment and the pointed weapon during his arrest by the officers on or before December 21, 2009.  With respect to the alleged excessive force the claims accrued when the underlying facts occurred at the time of Harris's arrest.  *Humphreys v. City of Ganado, Tex.*, 467 F. App'x 252, 255 (5th Cir. 2012); *Simms v. Harris*, No. 08-4136, 2009 WL 1607906, at *7-*8 (E.D. La. Jun. 2, 2009) (Order adopting Report and

---

[6]La. Civ. Code art. 3492 provides that: "[d]elictual actions are subject to a liberative prescription of one year. This prescription commences to run from the day injury or damage is sustained.  It does not run against minors or interdicts in actions involving permanent disability and brought pursuant to the Louisiana Products Liability Act or state law governing product liability actions in effect at the time of the injury or damage."

Recommendation); *Stewart v. Prince*, No. 10-0494, 2011 WL 2938127, at *2 (M.D. La. May 10, 2011), *report adopted*, 2011 WL 2884413, at *1 (M.D. La. Jul. 19, 2011). The complaint and the *Spears* Hearing testimony indicate that Harris knew of the alleged excessive force used against him at the time of the arrest on or before December 21, 2009, and was aware of the alleged threat and harassment he claims to have endured. Harris's factual allegations represent that he saw the taser pointed at him when he was confronted by the officers at the time of his arrest.

Applying the applicable prescriptive period, Harris had one year from the date of his arrest, or until December 21, 2010, to file his claims of excessive force, and he failed to do so. The clerk of this federal court filed Harris's complaint on November 20, 2012, when his pauper application was granted.[7] Under the applicable prisoner mailbox rule, however, Harris is considered to have filed this complaint on October 30, 2012.[8]

This date was over twenty-two (22) months after the one-year prescriptive period expired on December 21, 2010. Harris's complaint containing the claims of excessive force and harassment was not timely. Harris's claims must be dismissed as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

### B.    False Arrest/False Imprisonment

Harris has also asserted claims of false arrest and false imprisonment arising from his detention and arrest on or before December 21, 2009. The Supreme Court has declared that "[f]alse

---

[7]Rec. Doc. Nos. 1, 2, 3.

[8]In the prisoner context, the date prison officials receive the complaint from the prisoner for mailing to the court is the time of filing for limitations purposes. *Cooper v. Brookshire*, 70 F.3d 377 (5th Cir. 1995). Harris signed the form complaint on October 30, 2012, which is the earliest date appearing in the record on which he could have presented the pleading to prison officials for mailing to the Court.

arrest and false imprisonment overlap; the former is a species of the latter." *Wallace*, 549 U.S. at 388.  The Court resolved that, with false arrest and false imprisonment claims, damages accrue through the time period in which the detention is without legal process.  *Id*. at 389.  Once a plaintiff's detention is pursuant to legal process, the false arrest and false imprisonment comes to an end, and the separate tort of malicious prosecution begins.  *Id*. at 389-90.  The Court went on in *Wallace* to clarify the parameters of the tort claims of false imprisonment, hence false arrest, like those asserted here by the plaintiff:[9]

> Reflective of the fact that false imprisonment consists of detention without legal process, a false imprisonment ends once the victim becomes held pursuant to such process-when, for example, he is bound over by a magistrate or arraigned on charges. Thereafter, unlawful detention forms part of the damages for the "entirely distinct" tort of malicious prosecution, which remedies detention accompanied, not by absence of legal process, but by wrongful institution of legal process.  "If there is a false arrest claim, damages for that claim cover the time of detention up until issuance of process or arraignment, but not more.  From that point on, any damages recoverable must be based on a malicious prosecution claim and on the wrongful use of judicial process rather than detention itself." Thus, petitioner's contention that his false imprisonment ended upon his release from custody, after the State dropped the charges against him, must be rejected.  It ended much earlier, when legal process was initiated against him, and the statute would have begun to run from that date [ ].

*Wallace*, 549 U.S. 389-90 (emphasis, citations and footnote omitted).

Based on these premises, the Supreme Court decreed that "the statute of limitations upon a § 1983 claim seeking damages for a false arrest in violation of the Fourth Amendment, where the arrest is followed by criminal proceedings, begins to run at the time the claimant becomes detained pursuant to legal process."  *Id*. at 397; *Mapes v. Bishop*, 541 F.3d 582, 584 (5th Cir. 2008).  The Court went on to explain that legal process was, for example, when a person is bound over by a

---

[9]The Court notes that the Supreme Court refused to consider whether a malicious prosecution claim can be urged under § 1983 and instead addressed the claim as one under state law.

magistrate or arraigned on charges. *Id*. at 390. Since the Supreme Court addressed both false arrest and false imprisonment in this same light, both claims are subject to the same limitations period.

Applying the foregoing, Harris's claims of false arrest and false imprisonment arising out of his stop and arrest on or before December 21, 2009, accrued for limitations purposes when he was brought before a judicial officer for arraignment on the charges. Harris did not indicate the date of his arraignment on the forgery charge. However, Harris's forgery prosecution in Orleans Parish is a matter of public record of which this Court can take judicial notice. *See* F.R.E. 201.[10]

The United States Fifth Circuit has long recognized that a federal court can take judicial notice of the records and actions of another court.

> We may take judicial notice of another court's judicial action. *See Karaha Bodas Co. v. Perusahaan Perambangan Minyak Dan Gas Bumi Negara*, 2003 WL 21027134, at *4 (5th Cir. 2003). Although we cannot take judicial notice of findings of fact of other courts, the fact that a judicial action was taken is indisputable and is therefore amenable to judicial notice. *See Taylor v. Charter Med. Corp.*, 162 F.3d 827, 831 (5th Cir. 1998).

*Gray ex rel. Rudd v. Beverly Enterprises-Mississippi, Inc.*, 390 F.3d 400, 408 n.7 (5th Cir. 2004); *In re Moity*, 320 F. App'x 244, 249 (5th Cir. 2009) ("One court may also take judicial notice of another court's judicial actions."). The date on which Harris was arraigned confirms an indisputable fact and judicial notice of the date of that judicial action is appropriate.

---

[10]F.R.E. 201 provides in relevant part as follows:
(a) Scope. This rule governs judicial notice of an adjudicative fact only, not a legislative fact.
(b) Kinds of Facts That May Be Judicially Noticed. The court may judicially notice a fact that is not subject to reasonable dispute because it:
　　(1) is generally known within the trial court's territorial jurisdiction; or
　　(2) can be accurately and readily determined from sources whose accuracy cannot reasonably be questioned.
(c) Taking Notice. The court:
　　(1) may take judicial notice on its own; or
　　(2) must take judicial notice if a party requests it and the court is supplied with the necessary information.
(d) Timing. The court may take judicial notice at any stage of the proceeding. [ . . .]

9

Judicial notice of undisputable facts can be used at any time during a proceeding, including during the Court's review for frivolousness. *See Taylor v. Gibson*, 529 F.2d 709, 717 (5th Cir. 1976) (a complaint may dismissed as frivolous when the allegations of the complaint conflict with facts of which the district court may take judicial notice); *see also Chauhan v. Formosa Plastics Corp., USA*, 212 F.3d 595, 2000 WL 423367, at *1 (5th Cir. Apr. 4, 2000) (Table, Text in Westlaw) ("A court may take judicial notice at anytime during, including *sua sponte*."); *Morris v. Fulbruge*, No. 07-5429, 2008 WL 4059069, at *2 n.16 (E.D. La. May 27, 2008) (Order adopting Report and Recommendation).

The Court has obtained an electronic copy of the docket sheet from Harris's Orleans Parish criminal proceedings in Case No. 494631 in which he was charged with and has since pleaded guilty to forgery arising from his 2009 arrest related to the counterfeit football tickets at issue here.[11] Based on this record, the Court takes judicial notice of the fact that Harris was arraigned on the forgery charge on February 24, 2010.

Applying Louisiana's applicable one year statute of limitations, Harris had one year from that date, or until February 24, 2011, to file a complaint raising his claims of false arrest and false imprisonment, and he failed to do so. As determined above, Harris's complaint is deemed filed under the mailbox rule on October 30, 2012. That was twenty (20) months after the prescriptive period expired. These claims must also be dismissed as frivolous or for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

---

[11]The docket sheet copy is attached to this Report.

### C.   **Unreasonable Search and Seizure**

Harris also alleges that the officers engaged in an unreasonable search and seizure during his arrest in 2009 when Officer Labat also searched Harris's pockets when he was first stopped for waiving the counterfeit tickets in the air to sell.  This claim has also prescribed.

Fourth Amendment claims including false arrest and illegal search and seizure are considered analogous for purposes of determining the accrual of a claim.  *Humphreys*, 467 F. App'x at 255-56 (addressing the Fourth Amendment claims of excessive force, unreasonable search and seizure and false arrest together) (citing *Wallace*, 549 U.S. at 388).  In addressing these claims, the *Wallace* Court resolved that, in spite of the appearance that such claims would be barred by the rule of *Heck*,[12] these claims accrue when the petitioner is aware of the alleged injury suffered, which is at the time of the alleged violation and related arrest.[13]  *Reed v. Edwards*, 487 F. App'x 904, 905-06 (5th Cir. Aug. 27, 2012) (citing *Wallace*, 549 U.S. at 389-90).  For a claim of illegal search and seizure during an arrest, as with excessive force during arrest, the claim accrues at the time of the allegedly unlawful search when the petitioner knew at that time that the violation was occurring. *McCloud v. Jarus*, No. 09-0121, 2010 WL 103684, at *6-*7 (E.D. La. Jan. 7, 2010) (injuries from illegal search and seizure and excessive force are known when they occur at the time of search and arrest); *Jordan v. Strain*, No. 09-3565, 2009 WL 2900013, at *2 (E.D. La. Aug. 28, 2009) (Order

---

[12]*Heck v. Humphrey*, 512 U.S. 477 (1994).  Under the holding in *Heck*, an individual cannot bring a civil rights claim under § 1983 that would necessarily imply the invalidity of his conviction or sentence unless "the conviction or sentence has been reversed on direct appeal, expunged by executive order, declared invalid by a state tribunal authorized to make such determination, or called into question by a federal court's issuance of a writ of habeas corpus." *Heck*, 512 U.S. at 487.  However, where the unlawful search and seizure claim would not call into doubt the petitioner's conviction or sentence obtained by his plea of guilty, the claim is not barred by *Heck*.  "[A] suit for damages attributable to an allegedly unreasonable search may lie even if the challenged search produced evidence that was introduced in a state criminal trial resulting in the § 1983 plaintiff's still-outstanding conviction." *Id.* at 487 n.7.

[13]As discussed previously, for false arrest and false imprisonment, the injury accrues at the time the arrestee is brought to the first judicial appearance.

adopting Report and Recommendation) (same); *Shipp v. Richardson*, No. 07-CV-P693-S, 2008 WL 2358859, at *2 (W.D. Ky. June 7, 2008) (same); *Harris v. Rivera*, No. 11-CV-3013, 2013 WL 246709, at *7 (N.D. Tex. Jan. 23, 2013) (same).

In this case, Harris was present for the search of his pockets when he was first detained. Any claim arising from that search was known to him and began to accrue at that time, on or before December 21, 2009. Applying Louisiana's applicable prescriptive period, Harris had one year from the date of his arrest, or until December 21, 2010, to file his claim of illegal search and seizure, and he failed to do so. As the Court has already determined, Harris is considered to have filed this complaint under the mailbox rule on October 30, 2012, which was over twenty-two (22) months after the one-year prescriptive period expired on December 21, 2010.

Harris's complaint containing the claim of unlawful search and seizure was not timely filed. Harris's claim must be dismissed for that reason as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

## IV.    Recommendation

It is therefore **RECOMMENDED** that Harris's 42 U.S.C. § 1983 complaint raising claims of excessive force, false arrest, false imprisonment, and unlawful search and seizure against the defendants, Officers Louis Labat and Tracie Mendus, Sergeant Raymond Genovese, and Superintendent Ronal Serpas, be **DISMISSED WITH PREJUDICE** as frivolous and otherwise for failure to state a claim for which relief can be granted pursuant to 28 U.S.C. § 1915(e), § 1915A, and 42 U.S.C. § 1997e.

A party's failure to file written objections to the proposed findings, conclusions, and recommendation in a magistrate judge's report and recommendation **within fourteen (14)** days after being served with a copy shall bar that party, except upon grounds of plain error, from attacking on appeal the unobjected-to proposed factual findings and legal conclusions accepted by the district court, provided that the party has been served with notice that such consequences will result from a failure to object.  Douglass v. United Services Automobile Association, 79 F.3d 1415, 1430 (5th Cir. 1996).[14]

New Orleans, Louisiana, this 6th day of June, 2013.

**KAREN WELLS ROBY**
**UNITED STATES MAGISTRATE JUDGE**

---

[14]*Douglass* referenced the previously applicable ten-day period for the filing of objections.  Effective December 1, 2009, 28 U.S.C. § 636(b)(1) was amended to extend the period to fourteen days.

13

**Thursday, May 23, 2013**                                    EMPLOYEE LOGIN   Text Size

**Attachment to:**
**Case 2:12-cv-2783-MLCF-KWR**
**Report & Recommendation**

Home   About   Department   Visitation   Inmate Information   Docket Master   Civil Division   Community   Useful Links   Contact Us

**DOCKET MASTER**

```
   Case: 494631          D O C K E T   M A S T E R        Date: 05/23/2013
 Section: K                                               Time:  13:56:00
  Class: 3
                    ORLEANS PARISH CRIMINAL DISTRICT COURT

================================================================================
 DF# DEFENDANT(S):       CNTS CHARGE(S):
================================================================================

   1 HARRIS, CALVIN E
                          1  RS 14  72          BOND:        0.00
                             FORGERY
                          1  RS 15  529.1       BOND:        0.00
                             MULTIPLE BILL

================================================================================
  DATE    PROCEEDINGS
================================================================================

 02/09/2010                                                 NDIXON
           FILED BILL OF INFORMATION
           CAPIAS ISSUED
           BOND SET (NONE)
           MAGISTRATE PAPERWORK FILED (M-510156, DOB 8/10/68, F#2230837)
           *********************************************************
           *** ALLOTTED. ARRAIGNMENT SET FOR 2/24/10. PDOJL
 02/24/2010                                                 MARTINDA
           >THE DEFENDANT, CALVIN E HARRIS APPEARED FOR ARRAIGNMENT.
           >REPRESENTED BY JUDSON MITCHELL >READING OF BILL OF INFORMATION
           WAIVED. >DEFENDANT ENTERED PLEA OF NOT GUILTY. >DEFENDANT
           INFORMED OF RIGHT TO TRIAL BY JUDGE OR JURY. >HEARING ON
           MOTIONS SET FOR 03/19/10 >SEND NOTICES. >NOTIFY DEF.COUNSEL.
           >PDOJL
 03/09/2010                                                 MARTINDA
           >*CLERK DISREGARD HEARING ON MOTIONS SET FOR 03/19/10
           >CONTINUED ON DEFENSE MOTION. >HEARING ON MOTIONS SET FOR
           04/06/10 >SEND NOTICES. >NOTIFY DEF.COUNSEL. >PDOJL
 03/25/2010                                                 DUPLESSIST
           CLERK'S OFFICE RECEIVED DEFENSE MOTION FOR ISSUANCE OF SUBPOENA
           DUCES TECUM.
           >DEFENSE COUNSEL CHESTER BELL OF FOYOLA LAW CLINCI APPEARED ON
           BEHALF OF DEFENDANT, CALVIN E HARRIS, FOR FLD MOT/SUBPOENA DUCES
           TECUM.  THE DEFENDANT DID NOT APPEAR. >DEFENSE FILED: >-MOTION
           AND ORDER FOR ISSUANCE OF SUBPOENA DUCES TECUM. SECTION "B"
           ACTING ON BEHALF OF SECTION "K". >PLACE ON SECTION "K" DOCKET
           FOR HEARING ON MOTIONS ON 04/06/10.
 03/31/2010                                                 DUPLESSIST
           CLERK'S OFFICE RECEIVED DEFENSE MOTION FOR ISSUANCE OF INSTANTER
           SUBPOENA.
 04/06/2010                                                 MARTINDA
           >THE DEFENDANT, CALVIN E HARRIS APPEARED FOR HEARING ON MOTIONS
           WITH COUNSEL, JUDSON MITCHELL >THESE MOTIONS DID LIE: >SUPPRESS
           EVIDENCE >PRELIMINARY HEARING >STATE CALLED LOUIS LABAT, III
           >DEFENSE CALLED: TRACIE MENDUS CALVIN E. HARRIS RAYMOND
           GENOVESE >DEFENSE EVIDENCE: > D01 MUNICIPAL CODE REGARD
           SCALPING OF TICKETS >AFTER ARGUMENT. STATE AND DEFENSE
```

About   **Docket Master**   **Inmate Query**   **Civil Division**   **Resources**        Back to Top

Site Search powered by Ajax              *Protecting and Serving the Parish*   Translate
                                                   *of Orleans*